# UNITED STATES DISTRICT COURT
for the
Eastern District of Louisiana

| | |
|---|---|
| United States of America<br>v.<br>ARTHUR JOHNSON<br><br>*Defendant(s)* | )<br>)<br>)  Case No.<br>)       17-163 MAG<br>)<br>)<br>) |

**SEALED**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 28, 2017__ in the parish of __Orleans__ in the __Eastern__ District of __Louisiana__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C 841(a)(1), 846 | Conspiracy to distribute a controlled subsatnce |

This criminal complaint is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

William Hicks, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __12/28/2017__

_____
Judge's signature

City and state: __New Orleans, Louisiana__    Joseph C. Wilkinson, Jr., United States Magistrate Judge
*Printed name and title*

## **AFFIDAVIT**

**BEFORE ME**, the undersigned authority, personally came and appeared Special Agent William Hicks of the Federal Bureau of Investigation (FBI), United States Department of Justice, who, after being duly sworn, deposes and states the following information which he acknowledges as true to the best of his knowledge and belief:

1. I have been employed as a Special Agent with FBI for approximately 2 years. I have been assigned to the New Orleans Gang Task Force since 2017.

2. During my tenure as a Special Agent, I have completed twenty-one weeks of Basic Agent Training in Quantico, Virginia, authored multiple Title III affidavits (including a roving wiretap affidavit), and I have had experience conducting multiple narcotics investigations. This includes the use of Title III wire and electronic intercepts, electronic and physical surveillance, telephone toll analysis, computer records indices, and the use of confidential informants as techniques and methods to investigate narcotics traffickers.

3. I make this Affidavit based upon personal knowledge derived from my participation in this investigation and upon information from the following sources, which I believe to be reliable:

   a. Oral reports about this and other investigations, which I have received from members of the FBI, New Orleans Police Department (NOPD), Drug Enforcement Administration (DEA), and the Jefferson Parish Sheriff's Office (JPSO);

   b. Physical surveillance conducted by the FBI, JPSO and NOPD, which has been reported to me directly or indirectly;

   c. Public records;

   d. Information provided by confidential sources;

   e. Review of pen register and trap and trace information, telephone call records, and subscriber information;

   f. Recorded telephone calls intercepted on an authorized federal Title III

wire and electronic intercept, along with E-911 precise location (GPS) information;

  g.  Controlled purchases of heroin from the targets of this investigation.

4. I submit this affidavit in support of a criminal complaint for Arthur **JOHNSON**, aka "Unc," because I believe probable cause exists to charge him for the commission of one or more federal criminal offenses based upon the following facts that I have learned from my own personal investigation of this matter, as well as from information supplied by other law enforcement officials. This affidavit is submitted for the limited purpose of securing a criminal complaint; therefore, I am not setting forth each and every fact known to me concerning this investigation. I am including what I believe are facts sufficient to establish probable cause for the complaint sought.

5. Affiant personally, and in conjunction with other law enforcement agents, has been investigating **JOHNSON** and other associates, for their illegal heroin-trafficking activities in New Orleans East, Gert Town, Central City, and other areas of New Orleans. At the outset of this investigation, in April 2017, investigators met with CS-1,[1] who provided information about the heroin-distribution operation of **JOHNSON** and his co-conspirators. CS-1 has since made four purchases of heroin directly from **JOHNSON** and one purchase from a distributor of **JOHNSON**.[2] Prior to each controlled purchase of heroin, CS-1 contacted **JOHNSON** via a cellular telephone

---

[1] CS-1 has a criminal history that includes arrests for Possession with Intent to Distribute, Felon in Possession of a Firearm, Resisting Arrest, and Battery on a Police Officer. CS-1 has current pending charges for Possession with Intent to Distribute Heroin and Resisting Arrest. CS-1 cooperated with law enforcement in hopes of receiving leniency with his/her current charges. CS-1's information concerning **JOHNSON** and his drug trafficking organization has been corroborated by consensually recorded conversations, surveillance, and audio/video recordings obtained during controlled purchases. CS-1's information has not been found to be false or misleading. For these reasons, it is your affiant's belief that CS-1 is reliable as to the information that he/she provides.

[2] Those controlled purchases took place on April 19, 2017; May 4, 2017; May 16, 2017; June 7, 2017; and June 19, 2017

2

utilized by **JOHNSON**, ordered a quantity of heroin, and established a prearranged meeting location to complete the transaction. During the course of one of the controlled purchases, **JOHNSON** put CS-1 in contact with his distributor to coordinate and meet at a predetermined location where CS-1 received a quantity of heroin from the distributor.

6. On September 26, 2017, Affiant appeared before United States District Judge Kurt D. Engelhardt, and obtained an order authorizing the interception of electronic and wire communications for target telephone 504-510-1940, used primarily by **JOHNSON**. Interception began on September 27, 2017. Interception ceased on October 15, 2017, when **JOHNSON** effectively stopped using that telephone number. During the interception period, agents captured numerous calls and texts involving suspected narcotics transactions. **JOHNSON** frequently used coded and vague language in communicating with his drug associates. Two examples of such communications include:

(a) On September 28, 2017, **JOHNSON** exchanged text messages with a potential heroin supplier, First Name Unknown (FNU) Last Name Unknown (LNU) #2. Through intercepted calls, agents believe that **JOHNSON** met with FNU LNU #2 the previous day. **JOHNSON** texted FNU LNU #2, "That other thing ain't shit." FNU LNU #2 replied, "Which . . . The sampl." **JOHNSON** answered "Yes." FNU LNU #2 then asked, "Nothing at all." **JOHNSON** replied, "It's not worth getting all cut up already." Through prior experience, agents believe that **JOHNSON** met with FNU LNU #2 the previous day to complete a narcotics deal. Agents further believe that **JOHNSON** was letting FNU LNU #2 know that a sample given to **JOHNSON** by the unidentified male was of low quality and could not be diluted with a cutting agent to increase profits.

3

(b) On September 29, 2017, **JOHNSON** had an exchange of text messages with another unidentified male, FNU LNU #6. **JOHNSON** sent a message to FNU LNU #6 which read, "U holding me up I'm trying to move in the morning." FNU LNU #6 replied, "My bad for holding your homie still waiting on my damn brother man I still have like three of them things left and I got like 10 got to get four for my brother." **JOHNSON** responded, "I'm waiting on U." FNU LNU #6 then asked, "You wanted me to bring the 10 or wait till I get the whole thing." Through investigative experience, agents believe **JOHNSON** contacted FNU LNU #6 to let him know **JOHNSON** was expecting money from him so that **JOHNSON** could purchase more narcotics the following morning. Agents believe FNU LNU #6 was in possession of $10,000, and waiting for an additional $4,000 from his brother, totaling $14,000 he would bring to **JOHNSON**.

7. During the course of this investigation, **JOHNSON** routinely discontinued the use of his cellular telephones approximately every thirty days or less. On December 15, 2017, your affiant appeared before Judge Engelhardt and obtained an order authorizing the <u>roving</u> interception of electronic and wire communications for phones belonging to **JOHNSON**. This roving Title III is set to expire on January 14, 2017. Both Title III warrants allowed for E-911 GPS precision location monitoring.

8. In monitoring **JOHNSON's** communications, agents have intercepted a large number of drug conversations between **JOHNSON** and his co-conspirators. The evidence has shown that **JOHNSON** is a mid-level heroin dealer who obtains kilogram-levels of heroin and repackages the heroin in ounce and sub-ounce quantities for resale. Based on intercepted text messages and telephone calls, agents believe that these co-conspirators work together to provide

4

multiple grams of heroin to users and dealers throughout the New Orleans metropolitan area.

9. On December 27, 2017, agents intercepted communications between **JOHNSON** and an individual believed to be a supplier of heroin to **JOHNSON**. At approximately 11:00pm, agents were conducting surveillance of **JOHNSON** at his residence, 4710 Charlmark Drive, New Orleans, when they intercepted a call to **JOHNSON's** cellular telephone, (504) 209-6571. In this call, an unknown male told **JOHNSON** that he was "ready" for **JOHNSON**, and to meet at the "same spot as last time." Agents suspected this phone call to be drug-related, because **JOHNSON**, who is surveillance-conscious, and his associates often avoid referring to specific meeting locations or specific drug quantities over the phone. Within ten minutes of this call, surveillance agents observed **JOHNSON** leave 4710 Charlmark Drive in a black Honda Accord. Surveillance maintained visual contact of **JOHNSON**, who drove directly to the Holiday Inn, located at 330 Loyola Avenue, New Orleans. Agents observed **JOHNSON** pull up to the front of the hotel, where he met with an unknown black male who handed **JOHNSON** a heavily-weighted red bag. After receiving the bag, **JOHNSON** immediately departed at a high rate of speed towards interstate 10. Agents surveilling **JOHNSON** followed him directly back to 4710 Charlmark Drive. Approximately forty minutes later, monitoring agents intercepted a phone call from **JOHNSON** to the same number as the unknown male. **JOHNSON** indicated to the unknown male that he had something to give him, and that **JOHNSON** would "call when you should come down." Surveillance agents observed **JOHNSON** drive back to the front of the Holiday Inn hotel in a black Mercedes-Benz GLS 550, bearing Louisiana license plate "863 AJJ." Upon arrival, **JOHNSON** called the unknown male back and stated, "I'm here." Shortly thereafter, the same unknown black male approached **JOHNSON's** vehicle and accepted the same red bag he had

5

given **JOHNSON** previously. **JOHNSON** departed for interstate 10 and the unknown black male returned to the Holiday Inn. **JOHNSON** again returned to the residence 4710 Charlmark Drive.

10. The following day, December 28, 2017, surveillance agents again resumed surveillance at the Holiday Inn on Loyola Avenue. Agents observed the same unknown black male driving a grey Ford Expedition, bearing Illinois license plate "Y90 8045." Agents believed this unknown black male was possibly the source of supply of heroin to **JOHNSON**. Surveillance agents followed the grey Ford Expedition onto Interstate 10. Surveillance agents conducted a traffic stop on the Ford Expedition to attempt to identify the driver. Upon approaching the vehicle, agents detected the odor of marijuana inside the vehicle. Agents asked the driver for consent to search the vehicle. During this search, the red bag that had been in **JOHNSON's** possession the night before was found in the rear of the vehicle. When opened, the bag was found to contain just over $187,000. While questioned, the driver of the vehicle indicated that he had driven to New Orleans to "meet with someone and pick up some money." The driver further stated that he did not know what the money was for, and was "just doing a favor for a friend." Agents believe the driver came to New Orleans to pick up the money from **JOHNSON** in exchange for a shipment of heroin. The driver gave investigating agents consent to view his two cellular phones that were present inside the vehicle. Agents found contact information, as well as incoming and outgoing phone calls to **JOHNSON** that coincide with the previously mentioned intercepted phone calls.

11. After **JOHNSON** returned to 4710 Charlmark Drive after meeting the unknown male for the second time at the Holiday Inn, **JOHNSON** has left his residence one time. At 12:30pm, surveillance agents observed **JOHNSON** leave his residence and travel to a barber shop. **JOHNSON** then traveled to the General Nutrition Center (GNC) store at 8400 W Judge Perez

6

Drive. Through training and experience, your Affiant is aware that GNC sells products, such as sleeping aids, that drug dealers frequently use as "cutting agents" to dilute their drugs. **JOHNSON** then traveled to a Walmart located at Bullard and Interstate 10. A surveillance agent followed **JOHNSON** into the store. The agent saw **JOHNSON** purchase two small coffee grinders. Through training and experience, your Affiant is aware that drug dealers frequently use coffee grinders to cut and mix drug products with diluting agents. After **JOHNSON** left Walmart, **JOHNSON** then traveled back to 4710 Charlmark Drive. Agents suspect that **JOHNSON** intends to use the coffee grinders to "cut" the drug products at 4710 Charlmark Drive that **JOHNSON** just purchased from the unknown male at the Holiday Inn.

12. Based upon the above information, I submit that probable cause exists to conclude that **JOHNSON** has violated Title 21, United States Code, Sections 841 and 846 in connection with his suspected heroin distribution activities.

_____
William Hicks
Special Agent, FBI

Subscribed to and sworn before me on
December 28, 2017, in New Orleans, Louisiana.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF LOUISIANA